FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 8 - 2014 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ARTURO MONTALVO,

                Petitioner,

- against -

THOMAS LAVALLEY,

                Respondent.
-----------------------------------------------------------x

**OPINION & ORDER**

No. 11-cv-05200 (NG)

**GERSHON, United States District Judge:**

By order dated November 10, 2011, the Honorable Sandra J. Feuerstein, district judge, directed the State to file a limited answer to petitioner Arturo Montalvo's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, addressing the petition's timeliness under 28 U.S.C. § 2244(d).[1] For the reasons set forth below, the petition is dismissed as untimely.

## BACKGROUND

### 1. Trial and Direct Appeal

Following a jury verdict in the County Court, Suffolk County (Ohlig, J.), on February 10, 2003, petitioner was convicted of multiple counts of rape in the first degree, sexual abuse in the first degree, and endangering the welfare of a child. On March 10, 2003, he was sentenced to an aggregate period of incarceration of eighty-nine years.

Mr. Montalvo unsuccessfully appealed his conviction to the Appellate Division, Second Department, *People v. Montalvo*, 34 A.D.3d 600 (2d Dep't 2006), and the New York Court of

---

[1] This case was reassigned to me on January 18, 2012, pursuant to Local Rule 50.4.

1

Appeals denied leave to appeal on February 20, 2007, *People v. Montalvo*, 8 N.Y.3d 883 (2007). He did not seek certiorari from the Supreme Court of the United States.

## 2. "Hybrid Article 78" Applications and Related Documents[2]

Petitioner claims that, on February 18, 2008, he filed an Article 78 petition with the Supreme Court, Suffolk County, requesting that it direct "the Suffolk County Attorney to pay for an attorney for [him] to augment the attached C.P.L. § 440.10 application [he] need[s] to file"; "the Suffolk County Attorney to pay for an expert and other services for [him]," including a private investigator to obtain documents; and the Suffolk County Child Protective Services ("CPS") to provide its records and the victims' school records, which he argued were "illegally withheld from [him] during [his] trial."[3] Opposition to Motion to Dismiss, Exhibit A ¶ 1. He asked the court to provide him with these resources, "or alternatively, recognize my attempt, and accept the CPL § 440.10 motion [which he attached] for argument." *Id.* ¶ 8.

He now describes this filing—comprised of the Article 78 petition, together with the attached § 440.10 application—as a "hybrid Article 78" application, which, "in addition to seeking discovery, also sought to challenge [his] conviction" ("First Hybrid Petition"). Opposition to Motion to Dismiss ¶ 7. He contends that he "specifically incorporated the contents of [his] Article 440.10 application," since the Article 78 petition noted the constitutional issues

---

[2] On June 17, 2014, I directed the parties to amplify the record, given the factual uncertainties with respect to whether or not Mr. Montalvo filed documents in New York state courts seeking state post-conviction or other collateral review and in light of *Joseph v. Conway*, 567 F. App'x. 56 (2d Cir. 2014), which concluded that additional fact-finding was required to determine a petitioner's eligibility for statutory or equitable tolling. *See id.* at 60. The parties' supplemental submissions are included in this section.

[3] In some subsequent filings, Mr. Montalvo has stated that he filed this document with "Suffolk County." The court listed on the filing's caption and the address listed in the affidavit of service attached to the filing make it clear that the court he claims he filed it with is the Supreme Court, Suffolk County, rather than the County Court, Suffolk County.

2

addressed in his attached § 440.10 application. *Id.* ¶ 8. Although Mr. Montalvo has since stated that he brought the First Hybrid Petition as an "order to show cause," nothing on the face of the document indicates that he did so.[4]

Petitioner claims that he followed up, in writing, with the Supreme Court, Suffolk County, on June 10, 2008 and September 3, 2008, and with the Court Administrator on December 11, 2008, but received no response. The copies of the letters in the record do not contain proof of mailing.

On May 12, 2009, petitioner allegedly filed another "hybrid Article 78" application through an order to show cause with the Appellate Division, Second Department, which was similar to the First Hybrid Petition. He claims that he wrote follow up letters to the Appellate Division on June 8, 2009, December 29, 2009, and June 9, 2010, and to the Court Administrator on October 21, 2010. On September 10, 2011, he allegedly "wrote both courts informing them that if they did not address [his] application for relief within 60 days, [he] was going to initiate Federal Habeas relief." Affidavit in Support of Original Habeas Petition ¶ 13. He did not receive any responses. Petitioner's copy of the June 9, 2010 letter does not contain proof of mailing. He did not submit copies of the remaining letters to this court; they went missing, he asserts, because of "the amount of time which has elapsed and the results of several mishaps with the facility." Amended Habeas Petition at 11.

The state courts did not receive the filings and letters described above. After the State filed its motion to dismiss on November 22, 2011, Mr. Montalvo wrote the New York State Office of Court Administration on December 8, 2011, seeking information regarding the

---

[4] Under § 2214(d), "The court in a proper case may grant an order to show cause, to be served in lieu of a notice of motion, at a time and in a manner specified therein." N.Y. C.P.L.R. § 2214(d).

"complaints" he had lodged against the Supreme Court and the Appellate Division "concerning their failure to act on [his] application for an Order to Show Cause as to why [he] should not be assigned an attorney, private investigator and access to the Suffolk County CPS records related to [his] instant offense for the preparation of a CPL § 440.10 application." Respondent's Supplemental Submission, Ex. B. The Office of Court Administration forwarded Mr. Montalvo's December 8, 2011 letter to Marian Tinari, Esq. of the District Administrative Judge's Office for the Unified Court System of Suffolk County. She responded to petitioner on December 15, 2011:

> Although your letter indicates you have written four complaints to, respectively, the Suffolk County Supreme Court and the Appellate Division, Second Department, there is no reference information provided to investigate your inquiry. Upon receipt of such information, I will [be] better able to respond to your complaints.

*Id.*

In a subsequent letter, dated July 9, 2014, after the parties were asked to amplify the record, Ms. Tinari asserted that her office's records contain only Mr. Montalvo's letter and her response to him in December 2011, described above. She also stated:

> I have made an inquiry to the Suffolk County Supreme Court Clerk who, after a check of the Supreme Court data base, has ascertained that nothing resembling the type of motion described [a "hybrid Article 78" application] has been filed in that Court by Mr. Montalvo, nor did a search by the Chief Clerk of Suffolk County Clerk's office data base reveal the existence of any documents. Finally, the Suffolk County Court's Special Term Clerk conducted a physical search of the criminal court file which failed to reveal any paperwork which could be identified as a hybrid Article 78 petition.

*Id.*

In response to the court's request that the parties amplify the record, the State also submitted a letter from Aprilanne Agostino, Clerk of the Appellate Division, Second Department, dated June 25, 2014, stating, "This Court has no record of Mr. Montalvo ever

having filed, or attempting to file, a proceeding pursuant to CPLR Article 78, or of any inquiry by Mr. Montalvo into the status of any such proceeding." *Id.*, Ex. A. The Appellate Division's records show only one letter from petitioner, dated December 8, 2011, which requested "a copy of the Order to Show Cause I submitted and several letters I sent to this Court in my criminal matter." *Id.* Ms. Agostino provided a copy of this letter, as well as her office's response that it had no record of having received the documents described in petitioner's December 8, 2011 letter.

Petitioner argues that the prison mailroom at Clinton Correctional Facility misplaces inmates' papers, and that, despite his efforts, the petitions may not have been mailed. In a sworn declaration, dated July 14, 2014, petitioner describes his recollection of how he submitted the First Hybrid Petition:

> On Monday, February 18, 2008, at approximately 7:30 am, I turned over my hybrid Article 78 to Officer Steven Nye, who was in charge of A-Block in Clinton Correctional Facility. This took place at the A-Block Officer's Station. He told me to place the envelopes on *top* of the A-Block mailbox, as the slot was too small and the box too shallow to accept more than a standard letter. I expressed concern, due to the large number of stamps on the envelopes (15 to 20 each), and the general insecurity of it. He assured me that that was how it was done in Clinton, and not to worry about it. I complied. The mail was gone the following morning.

Petitioner's Supplemental Submission at 1-2 (emphasis in original). In previous filings, petitioner explained, more generally, that, "when giving our legal mail to an officer it is not put in the mail box, but is required to be carried up front by the officer," Opposition to Motion to Dismiss ¶ 15; that is, "[l]egal mail packages must be given to Correctional Officers, no paperwork is signed that they took the mail, and it is up to them to deliver the documents to the mailroom for processing," Response to Motion to Dismiss ¶ 7; Amended Habeas Petition at 11. In response to the court's request that the parties amplify the record, respondent stated that it was

"unable to contact Corrections Officer Nye, but . . . it would have been difficult, if not impossible, for Officer Nye to recall receiving any alleged envelopes from petitioner to be mailed out on this specific occasion over six years ago." Reply to Supplemental Submission.

Petitioner has submitted letters to this court, dated November 25, 2011 and December 2, 2011, indicating that he requested proof of his legal mail log from the prison mailroom. On the latter document, a handwritten note dated December 6, 2011 states that petitioner should write "Inmate Records" for a "FOIL" request for copies of legal mail. Petitioner has also submitted a letter dated December 19, 2011 requesting proof from the "Inmate Records Coordinator" that he sent legal mail on certain dates. He claims that he never received a response to his request.

In response to the court's directive to amplify the record, the State submitted a July 18, 2014 letter from Deborah Jarvis, Inmate Records Coordinator at the prison, who determined that there was no record of petitioner having sent any legal mail sent between February 1, 2008 and September 17, 2011. However, she also "advised that legal mail is not recorded unless it is sent by USPS 'special service' such as certified etc[.] with a disbursement." Respondent's Supplemental Submission, Ex. C.

Unlike petitioner's other filings, the copies of the two "hybrid Article 78" applications that he relies on here show that these alleged filings were signed under penalty of perjury, rather than notarized.

Petitioner did not serve, and respondent did not receive, either "hybrid Article 78" application. He argues that he did not need to serve respondent because both applications were submitted as orders to show cause.[5]

---

[5] The "hybrid Article 78" application allegedly sent to the Appellate Division was filed as an order to show cause. However, as noted above, the First Hybrid Petition, allegedly sent to the Supreme Court, Suffolk County, bears no evidence that it was filed as an order to show cause,

### 3. Original Petition for a Writ of Habeas Corpus

On October 18, 2011, petitioner filed a *pro se* habeas petition ("Original Habeas Petition"), seeking to reverse his conviction based on: (1) deprivation of due process and a fair trial because the court denied his severance motion where medical documentation existed for one victim, but not the other, and the court failed to instruct the jury to consider the evidence as to each count separately; (2) deprivation of due process and a fair trial based on the inclusion, without notice, of prejudicial testimony lacking in probative value about uncharged crimes and the failure to give a limiting instruction; (3) deprivation of the right of confrontation based on the court's denial of his motion for access to CPS and school records, after an *in camera* inspection, and refusal to grant a hearing to suppress victims' testimony based on allegations that their mother coached them; (4) deprivation of a fair trial based on prosecutorial misconduct because the prosecutor did not seek a ruling on uncharged crimes, supported witnesses' perjury about their relationship with CPS workers, and improperly vouched for the propriety of his conduct on summation; (5) deprivation of a fair trial based on court bias; and (6) and ineffective assistance of trial counsel. He stated that "actual innocence" may toll the one-year limitations period prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), but submitted no facts in support of this claim. He also sought an order for the production of Grand Jury minutes, and CPS and school records for *in camera* inspection; an order directing trial counsel, the district attorney, and the trial court to answer interrogatories; or, in the alternative, a certificate of appealability.

---

although letters he sent afterward, on June 10, 2008 and September 3, 2008, refer to the filing as an "application for an order to show cause."

### 4. Other Filings in New York State Courts

On November 28, 2011, Mr. Montalvo filed a *pro se* application for a writ of error coram nobis to vacate the Appellate Division's affirmance of the County Court's judgment. The appellate court denied his application on November 7, 2012, *People v. Montalvo*, 100 A.D.3d 658 (2d Dep't 2012), and the New York Court of Appeals denied leave to appeal on January 22, 2013, *People v. Montalvo*, 20 N.Y.3d 1013 (2013).

On October 26, 2012, he filed a *pro se* § 440.10 application with the County Court, Suffolk County to vacate his judgment of conviction and sentence, which was denied on December 28, 2012.[6] The Appellate Division denied leave to appeal on March 12, 2013.

### 5. Amended Petition for a Writ of Habeas Corpus

On July 17, 2013, petitioner sought permission to file an amended petition for habeas relief ("Amended Habeas Petition"), presenting several new claims. The Amended Habeas Petition summarizes previously presented arguments for the Original Habeas Petition's timeliness and describes alleged "new evidence" for an actual innocence claim. Petitioner seeks a hearing on whether or not he is entitled to tolling, the production of the alleged prior gynecological examination, the production of files related to two other persons alleged to have been previously accused of misconduct by the victims' family, and the appointment of counsel.

## ONE YEAR HABEAS CORPUS LIMITATIONS PERIOD

AEDPA imposes a one-year statute of limitations for habeas corpus petitions, running from the date on which the latest of the following four events occurs:

(A) the date on which the judgment became final by the conclusion of direct

---

[6] Petitioner's October 26, 2012 § 440.10 application was similar to the § 440.10 application attached to the First Hybrid Petition.

review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

With respect to subsection (A), where a state prisoner does not seek review all the way to the Supreme Court, "the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires."[7] *Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012) (quoting 28 U.S.C. § 2244(d)(1)(A)). A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort must be filed with the Supreme Court within ninety days after entry of the order denying discretionary review. Rule 13 of the Rules of the Supreme Court of the United States; 28 U.S.C. § 2101(d).

Since the New York Court of Appeals denied petitioner leave to appeal on February 20, 2007, his conviction became final ninety days later, on May 21, 2007. Therefore, pursuant to 28 U.S.C. § 2244(d)(1)(A), his petition was time-barred as of May 20, 2008—nearly three-and-a half years before he filed his federal habeas petition—unless the limitations period has been

---

[7] Petitioner makes his claim under only subsection (A). A review of the record does not support the application of subsections (C) or (D). The court has also considered subsection (B), but has determined that it does not apply in light of the court's conclusions regarding the insufficiency of petitioner's evidence that he was prevented from filing the First Hybrid Petition.

9

tolled by statutory or equitable considerations.[8]

## STATUTORY TOLLING

The AEDPA limitations period is tolled during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2). The burden of establishing entitlement to the benefit of a basis for tolling of the limitations period rests with a petitioner. *See Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010); *Fleegle v. Conway*, 2010 WL 4365659, at *6 (N.D.N.Y. Aug. 5, 2010), *report and recommendation adopted*, 2010 WL 4316572 (N.D.N.Y. Oct. 26, 2010). Nonetheless, in *Joseph v. Conway*, 567 F. App'x. 56 (2d Cir. 2014), the Second Circuit instructed that a *pro se* incarcerated litigant must be given "special solicitude and liberal construction of his submissions" because he is "not in a position to carry out his own investigation to substantiate his submissions." *Id.* at 60 (internal quotation marks omitted). As noted in footnote two, the court has directed the parties to create a more complete factual record in light of the factual uncertainties regarding whether or not petitioner filed documents in New York state courts seeking state post-conviction or other collateral review.

Mr. Montalvo argues that "the entire period while [he] sought to obtain counsel via [his] Article 78 application and CPLR § 1101, should be tolled." Amended Habeas Petition at 13. Section 1101 *et seq.* concerns poor person relief in New York state courts; pursuant to § 1102(a), a "court in its order permitting a person to proceed as a poor person *may* assign an attorney." N.Y. C.P.L.R. § 1102(a) (emphasis added). Neither petitioner's "hybrid Article 78" applications nor his other filings expressly refer to § 1101 *et seq.*, but the court understands petitioner as seeking to toll the limitations period beginning on February 18, 2008, when he allegedly filed the

---

[8] 2008 was a leap year.

First Hybrid Petition. Since that petition was the only document allegedly submitted before the May 20, 2008 AEDPA deadline, it is the focus of the analysis below.

The First Hybrid Petition does not entitle petitioner to statutory tolling. First, the Article 78 portion does not constitute "collateral review with respect to the pertinent judgment" under § 2244(d)(2). "Collateral review of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." *Wall v. Kholi*, 131 S. Ct. 1278, 1285 (2011) (internal quotation marks omitted); *Collins v. Ercole*, 667 F.3d 247, 251 (2d Cir. 2012). Motions "for post-conviction discovery" and "for appointment of counsel," like those in issue here, "generally are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment." *Wall*, 131 S. Ct. at 1286 n.4; *Collins*, 667 F.3d at 251 n.5. For instance, in *Hodge v. Greiner*, 269 F.3d 104 (2d Cir. 2001), the Second Circuit considered whether an Article 78 proceeding seeking documents regarding an investigation could toll AEDPA's limitations period. *See id.* at 107. The Court declined to toll the limitations period because the "Article 78 proceeding did not challenge [petitioner's] conviction"; "[r]ather, it sought material he claimed might be of help in developing such a challenge." *Id.* "[I]f a filing of that sort could toll the AEDPA limitations period, prisoners could substantially extend the time for filing federal habeas petitions by pursuing in state court a variety of applications that do not challenge the validity of their convictions." *Id.*

Here, Mr. Montalvo's Article 78 petition asked the court to direct the County to pay for an attorney, an expert, and other services, and direct CPS to provide records. Rather than seeking a review of the judgment itself, his petition sought resources that could be of assistance in a future collateral action.

The Second Circuit noted in *Hodge* that it "need not decide whether, on facts differing

11

from those in the pending matter, an Article 78 proceeding might be deemed the functional equivalent of an application for State post-conviction or other collateral review within the meaning of subsection 2244(d)(2)." *Id.* (internal quotation marks omitted); *Collins*, 667 F.3d at 251 n.6. However, that Mr. Montalvo mentioned constitutional issues in his Article 78 petition does not deem it the "functional equivalent" of "post-conviction or other collateral review," since the purpose of his Article 78 petition was to obtain resources and evidence, rather than to bring constitutional issues to the court's attention.

Unlike Article 78 petitions, § 440.10 motions generally toll AEDPA's limitations period. *See Hodge*, 269 F.3d at 107 n.2. However, that Mr. Montalvo attached a § 440.10 motion to his Article 78 petition does not change the result here because, if the § 440.10 motion was truly filed, it was filed with the wrong court and thus was not "properly filed." An application is "'*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," prescribing, for example, "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis in original); *see also Satterfield v. Johnson*, 434 F.3d 185, 192 (3d Cir. 2006) (state petition was not "properly filed" where it was sent to wrong court); *Sibley v. Culliver*, 377 F.3d 1196, 1202 (11th Cir. 2004) (same). Pursuant to § 440.10(1), "At any time after the entry of a judgment, *the court in which it was entered* may, upon motion of the defendant, vacate such judgment . . . ." N.Y. C.P.L.R. § 440.10 (emphasis added). Accordingly, rather than send his petition to the Supreme Court, Suffolk County, Mr. Montalvo should have filed it with the court that entered judgment against him, the County Court, Suffolk

County.[9] *See, e.g., Pirro v. Cirigliano*, 226 A.D.2d 465, 466 (2d Dep't 1996), *aff'd*, 88 N.Y.2d 1033 (1996) (Supreme Court, Westchester County, was prohibited from entertaining § 440.10 motion, where judgment was rendered in the County Court, Westchester County).

The First Hybrid Petition was improperly filed for an additional reason: the State was never served. Mr. Montalvo claims to have filed the petition as an order to show cause. Yet, the copy that he submitted to this court contains no indication that it was meant to be an order to show cause, and no court reading it would assume that it was one.

In any event, it is clear that petitioner did not actually intend the court to rule upon his attached § 440.10 motion. The accompanying affidavit stated that petitioner sought a lawyer to "augment the attached C.P.L. § 440.10 application [he] *need*[ed] to file," and asked the court to "use its discretionary powers to assign [him] counsel *to perfect* the attached Article 440 application."[10] Opposition to Motion to Dismiss, Exhibit A ¶ 1. The verification referred to the submission of his Article 78 application only, not the § 440.10 motion. His June 10, 2008 letter stated that the Article 78 petition was necessary so that he "could prosecute a CPL § 440.11 [sic] application, which was attached to the application," and his September 3, 2008 letter stated that the "application is very important for me because I can't get around to do the things *I need to do for my CPL § 440.10 application in order to support it, and I need an expert and other assistance to help prove my case.*" *Id.*, Exhibit B. On December 8, 2011, he asked about the delay regarding his "application for an order to show cause as to why I should not be assigned an attorney, private investigator and access to the Suffolk County CPS records related to my instant

---

[9] The court also notes that petitioner could have requested counsel in connection with his § 440.10 motion.

[10] Similarly, petitioner's second "hybrid Article 78" application stated that "this Court simply must use its discretionary powers to assign me counsel *to perfect the attached Article 440 application* . . . ." Amended Habeas Petition, Ex. C ¶ 7.

13

offense *for the preparation of* a CPL § 440.10 application." Respondent's Supplemental Submission, Ex. B. Most tellingly, on October 26, 2012, when Mr. Montalvo eventually filed his § 440.10 application, *he filed it with the correct court*, indicating both that he knew where to file it and that he intended that court to rule on it.

Finally, even if this court could treat the First Hybrid Petition as a proper filing, there is insufficient evidence that petitioner ever submitted it to prison authorities for mailing. Under the "prison mailbox rule," a petition is deemed filed as of the time a petitioner gave it to prison officials to mail, which is presumed to be the date it was signed. *See Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005). The Second Circuit has not yet addressed whether the prison mailbox rule is available when a state court never received a filing, and other circuits have answered the question differently. *See Joseph*, 567 F. App'x. at 59 (declining to answer question); *compare Ray v. Clements*, 700 F.3d 993, 1008 (7th Cir. 2012) (after petitioner makes *prima facie* showing of delivery, burden shifts to state to disprove delivery), *and Allen v. Culliver*, 471 F.3d 1196, 1198 (11th Cir. 2006) (same), *and Caldwell v. Amend*, 30 F.3d 1199, 1202-03 (9th Cir. 1994) (same), *with Grady v. United States*, 269 F.3d 913, 916-17 (8th Cir. 2001) (petitioner has "ultimate burden" to show entitlement to prison mailbox rule).

Upon the record now before the court, it is clear that the Supreme Court, Suffolk County, never received petitioner's First Hybrid Petition, and respondent was never served. Petitioner's claim therefore rests solely on the argument that prison officials did not mail his petition.

Based on a thorough review of the record, and with due solicitude to petitioner's *pro se* status, the court finds insufficient evidence to support Mr. Montalvo's claim that he submitted his First Hybrid Petition for mailing on February 18, 2008. His evidence consists of the First Hybrid Petition itself and his affidavit. Aside from petitioner's own self-serving statements, he

has not supplied any evidence to corroborate his claim that he handed the First Hybrid Petition to Officer Nye on February 18, 2008. It is undisputed that prison officials sent all of his subsequent filings, and Mr. Montalvo offers no explanation for why they would have failed to mail just two of his filings and related letters, one of which was the only document that would make his habeas petition timely. And, it strains belief to suppose that these two just happen to be the only filings he has made which were signed under penalty of perjury, rather than notarized, and happen to be the only filings submitted as orders to show cause, excusing the requirement to serve the State.[11] Considering the totality of the evidence, Mr. Montalvo has not established that the First Hybrid Petition was "properly filed" with the trial court. *See, e.g., Fleegle*, 2010 WL 4365659, at *6 (§ 440.10 motion was not "properly filed" where the court had no record of it and no evidence suggested that it "was in compliance with all applicable requirements of state law, or that it was actually accepted for filing"); *Harvey v. People of the City of New York*, 435 F. Supp. 2d 175, 179 (E.D.N.Y. 2006) (declining to toll statute of limitations where petitioner failed to offer evidence corroborating claim that papers were mailed).

In sum, even giving petitioner's showing the most liberal possible construction, petitioner has failed to show that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" was pending during the one-year limitations period, and he is not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2).

### EQUITABLE TOLLING

AEDPA's limitations period is subject to equitable tolling where a petitioner shows "that some extraordinary circumstance stood in his way and prevented timely filing" and "that he has

---

[11] Although the State does not argue that notarization was required, a declaration sworn before a notary public and dated by that official would have provided petitioner some independent proof of his claim.

been pursuing his rights diligently." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotations omitted); *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004). A petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). Equitable tolling is reserved for "rare and exceptional circumstance[s]." *Bolarinwa*, 593 F.3d at 231 (internal quotation marks omitted).

Petitioner claims that he has faced "extraordinary circumstances" "[b]ecause of the type of case [he] ha[s]": he was "set upon by other inmates," his cell was "searched and ransacked" in retaliation for requesting his legal mail logs, he was "denied access to the law library," and his legal papers were lost by prison officials. Opposition to Motion to Dismiss ¶¶ 12, 13, 15.

With respect to the first allegation, petitioner has submitted only prison documents regarding a fistfight with another inmate on February 4, 2010. This incident was not an "extraordinary circumstance" because it occurred years after the expiration of the AEDPA limitations period and therefore could not have caused his late filing. For the same reason, petitioner's only evidence of a search—a prison form documenting a contraband search on November 28, 2011, after the AEDPA deadline and even after he filed the Original Habeas Petition—does not suffice.[12]

---

[12] Petitioner does not claim that prison officials confiscated legal documents or work product necessary for filing his habeas petition. *See Valverde*, 224 F.3d at 134 ("a person is plainly 'prevented' from filing a pleading for some period of time if he is deprived of the sole copy of that pleading"). As explained above, he filed his federal habeas petition before the contraband search.

As a general rule, restricted access to a prison's law library does not warrant equitable tolling, *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005); *Lindo v. Lefever*, 193 F. Supp. 2d 659, 663 (E.D.N.Y. 2002); *Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002), since it and other difficulties encountered by inmates are "nuisances that are part and parcel of prison life," not rising to the level of "extraordinary circumstances," *Phillips v. LaValley*, 2012 WL 443856, at *12 (W.D.N.Y. Feb. 10, 2012). Mr. Montalvo has submitted the prison's December 9, 2004 response to his grievance, stating that petitioner "has not substantiated his allegation of being denied access to the Law Library" and was "presently scheduled for dates in December, however prior to that, his last request on record was July 2004." Opposition to Motion to Dismiss ¶ 13, Ex. J. Thus, his evidence on the question of access—not to mention, his numerous legal filings in state courts—indicates that he was, in fact, given access to the law library or did not seek it.

Finally, petitioner's allegation that prison officials lost his First Hybrid Petition, which he allegedly submitted for mailing on February 18, 2008, does not warrant equitable tolling. Most important, as explained, *supra*, there is insufficient evidence that he *actually submitted* his First Hybrid Petition to prison officials for mailing. If Mr. Montalvo did not submit his petition to prison officials, no "extraordinary circumstance" stood in his way and prevented timely filing.

But, even if he did give the First Hybrid Petition to prison officials, in light of the court's findings with respect to petitioner's many filing mistakes, which were, for the most part, repeated when he filed his second "hybrid Article 78" application, he has not shown that he has been pursuing his rights diligently. Furthermore, by Mr. Montalvo's account, it took nearly three-and-a-half years of silence from the state courts for him to file his federal habeas petition.

In sum, he has failed to show that AEDPA's one-year limitations period should be equitably tolled.

## ACTUAL INNOCENCE[13]

A showing of "actual innocence" may open a "gateway" to consideration of an otherwise time-barred habeas petition. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013); *Rivas v. Fischer*, 687 F.3d 514, 548 (2d Cir. 2012). "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 133 S. Ct. at 1936 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). A claim of actual innocence "must be both 'credible' and 'compelling.'" *Rivas*, 687 F.3d at 541 (quoting *House v. Bell*, 547 U.S. 518, 521, 538 (2006)). To be "credible," the evidence must consist of "'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not present at trial.'" *Rivas*, 687 F.3d at 541 (quoting *Schlup*, 513 U.S. at 324). A claim is "compelling" if it reveals that, "'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Rivas*, 687 F.3d at 541 (quoting *House*, 547 U.S. at 538). This "standard is 'demanding and permits review only in the extraordinary case.'" *Rivas*, 687 F.3d at 542 (quoting *House*, 547 U.S. at 538).

---

[13] Even assuming, without deciding, that some or all of the additional grounds set forth in the Amended Habeas Petition "relate back" to the Original Habeas Petition, *see* Fed. R. Civ. P. 15(c), for the reasons explained above, the Original Habeas Petition was not timely filed. Although the Amended Habeas Petition is time-barred as well, the court has considered the actual innocence argument presented in petitioner's Amended Habeas Petition.

Mr. Montalvo has fallen far short of establishing his actual innocence. The variety of evidence he presents to this court is not "new reliable evidence" in the sense required by *Rivas*. Instead, he addresses evidence that—assuming it exists and that it shows what he thinks it might—may have proven helpful at his trial. Accordingly, his habeas petition must be dismissed as time-barred. Petitioner's requests for the court to hold an evidentiary hearing, and for it to direct the production of documents, responses to interrogatories, and the appointment of counsel, are also denied.

## CONCLUSION

Mr. Montalvo's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied as untimely. As he has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment for respondent.

The court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* relief is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
December 8, 2014